UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JAMES O. WRIGHT JR.,

                Plaintiff,

    v.

E.M. HENDRICHSEN, et al,

                Defendants.

Case No. 3:17-cv-05961-RBL-TLF

REPORT AND RECOMMENDATION

Noted for June 29, 2018

       This matter has been referred to the undersigned Magistrate Judge pursuant to *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976), 28 U.S.C. § 636(b)(1)(B), and Local Rule MJR 4(a)(4), and is before the Court on a motion to dismiss by defendants E.M. Hendrickson, Sgt. Dan Smith, D. Duncan, J. Hazen, R. Donald, J. Watkins, Jason E. Barney, and Chief of Police for the City of Olympia Ronnie Roberts (the "Olympia defendants"). Dkt. 12. For the reasons set forth below, the undersigned recommends the Court deny the motion in part and grant it in part.

FACTUAL AND PROCEDURAL HISTORY

       Plaintiff is currently an inmate at the Coyote Ridge Corrections Center. Dkt. 4, p. 3. In his complaint, plaintiff states that on the night of May 18, 2014, he was sitting in a restaurant in the City of Olympia, having just finished a milkshake. *Id.* at p. 7 He paid for the milkshake with

REPORT AND RECOMMENDATION - 1

1   a $50 bill. Dkt. 4, p. 7. After waiting a few minutes, plaintiff asked the waitress to whom he gave

2   the $50 bill about his change. *Id.* In response, she told plaintiff she mistakenly gave the money to

3   another person who had left the restaurant. *Id.*

4         Plaintiff states the waitress informed him that if he wanted his change, he would have to

5   chase after that person to get the money. *Id.* Plaintiff declined to do so, deciding instead to

6   remain at the restaurant. *Id.* Plaintiff states the waitress became frustrated and told him that if he

7   did not leave she would call the police. *Id.* After plaintiff indicated he would not leave until he

8   got his change, the waitress called the police. *Id.*

9         Defendants Hendricksen and Hazen, both City of Olympia police officers, were the first

10  to arrive at the restaurant. *Id.* at pp. 7, 10. Plaintiff states he explained to the officers what had

11  happened, but they told plaintiff he would have to leave the restaurant or they would physically

12  remove him from the restaurant and arrest him. *Id.* at pp. 10-13. This is then what they proceeded

13  to do, injuring plaintiff's leg as they dragged him out of the restaurant. *Id.* at p. 13.

14        Once outside, defendant Hendricksen and defendant Hazen were joined by defendants

15  Sgt. Dan Smith, R. Donald, J. Watkins, and D. Duncan, all of whom are also City of Olympia

16  police officers. *Id.* at pp. 13-14. Plaintiff states all six defendant police officers then used

17  extreme excessive force to subdue him, causing additional physical injury to his face and head.

18  *Id.* at pp. 14-15. At one point, plaintiff feared for his life as a result of the defendant police

19  officers placing all of their weight on his head and back, preventing him from being able to

20  breathe. *Id.* at pp. 15-16.

21        Plaintiff states that at no time during this whole encounter was he resistant or combative.

22  *Id.* at p. 16. Plaintiff was placed in handcuffs that he found to be "excruciatingly tight," which

23  the defendant police officers refused to loosen despite plaintiff repeatedly asking them to do so.

24

25

REPORT AND RECOMMENDATION - 2

1  Dkt. 4, p. 16. At one point during this encounter, one of the defendant police officers poked

2  plaintiff's left foot with a sharp or pointed instrument, which caused plaintiff's leg to reflexively

3  make contact with defendant Smith. *Id.* at p. 17.

4      Plaintiff states the defendant police officers used this contact as a pretext as part of a

5  common scheme to arrest him. Dkt. 4, pp. 18-19. They then "hogtied" plaintiff and threw him

6  across the floor of a police patrol car, which caused additional injuries to his shoulders, wrists,

7  face, and head. *Id.*

8      Plaintiff went to trial on a charge of third degree assault in the Thurston County Superior

9  Court, and was found not guilty by a jury on June 2, 2015. *Id.* at pp. 22, 35. Due to defendants'

10  actions, plaintiff states he suffered extreme trauma and mental distress, resulting in the eventual

11  loss of his home and business and in him becoming homeless. *Id.* at pp. 21-22.

12      Plaintiff asserts claims of excessive use of force, false arrest and unlawful imprisonment.

13  *Id.* at pp. 25-29. He also asserts the Olympia defendants colluded with defendant J. Andrew

14  Toynbee, a Thurston County deputy prosecutor in bringing false assault charges against him, and

15  thus plaintiff asserts a claim of malicious prosecution against the Olympia defendants as well. *Id.*

16  at pp. 29-30. As a result, plaintiff alleges his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

17  Amendment rights were violated. *Id.* at p. 24. He seeks both injunctive relief and compensatory

18  and punitive damages. *Id.* at 31.

19      The Olympia defendants seek dismissal of plaintiff's claims against defendants Roberts

20  and Barney on the basis of lack of personal participation. The Olympia defendants further assert

21  all of plaintiff's claims against them are barred based on statute of limitations grounds. The

22  undersigned agrees that plaintiff's excessive force, false arrest, and unlawful imprisonment

23  claims are barred by the statute of limitations, and that his claims against defendants Roberts and

24

25

1  Barney should be dismissed for lack of personal participation. The malicious prosecution claim
2  against the remaining Olympia defendants should not be dismissed, however, as it is not barred
3  by the statute of limitation.

4                                    DISCUSSION

5  I.     Standard of Review

6       The Court's review of a motion to dismiss under Federal Rule of Civil Procedure
7  ("FRCP") 12(b)(6) is limited to the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th
8  Cir. 2001). The Court held in *Ashcroft v. Iqbal,* 680 U.S. 662, 678 (2009): "sufficient factual
9  matter, accepted as true, to state a claim to relief that is plausible on its face" must be contained
10 in the complaint in order to survive a motion to dismiss under FRCP 12(b)(6). A pro se
11 complaint must be liberally construed. *Mangiaracina v. Penzone,* 849 F.3d 1191, 1195 (9th Cir.
12 2017). All material factual allegations in the complaint "are taken as admitted," and the
13 complaint is to be liberally "construed in the light most favorable" to the plaintiff. *Id.*; *Jenkins v.
14 McKeithen*, 395 U.S. 411, 421 (1969).

15 II.    Personal Participation

16      Section 1983 creates liability for "[e]very person who, under color of" state law deprives
17 "any citizen . . . or other person" of his or her "rights, privileges, or immunities" secured by the
18 United States Constitution or other federal law. 42 U.S.C. § 1983. It allows plaintiffs to "bring
19 federal constitutional and statutory challenges to actions by state and local officials." *Naffe v.
20 Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quoting *Anderson v. Warner*, 451 F.3d 1063, 1067
21 (9th Cir.2006)).

22      To state a Section 1983 claim, a plaintiff thus must both: (1) allege his or her federal
23 constitutional or statutory rights were violated, and (2) show a person acting under color of state
24 law deprived him or her of those rights. *Naffe*, *supra* at 1035-36; *Tsao v. Desert Palace, Inc.*, 698
25

1   F.3d 1128, 1138 (9th Cir. 2012). Section 1983 is the appropriate avenue to remedy an alleged

2   wrong only if both of these elements are present. *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th

3   Cir. 1985).

4       To establish liability for a cause of action under Section 1983, a plaintiff must show the

5   defendant, acting under color of state law, personally participated in the alleged deprivation of

6   federal constitutional or statutory rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

7   The plaintiff must allege the defendant, through his or her own individual actions, violated those

8   rights. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

9       A person deprives another "of a constitutional right, within the meaning of section 1983,

10  if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act

11  which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]."

12  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in the original) (citation omitted).

13      Plaintiff sets forth no facts to show defendant Barney caused or personally participated in

14  causing the harmed alleged, either stemming from his arrest or the resulting prosecution and trial.

15  Indeed, plaintiff no longer seeks to hold defendant Barney liable in this matter. *See* Dkt. 20, p. 3.

16  As for defendant Roberts, plaintiff sets forth no facts showing defendant Roberts – to the extent

17  he acted at all – acted other than in his supervisory capacity. Dkt. 4.

18      A supervising official may be liable, however, "only if either (1) he or she was personally

19  involved in the constitutional deprivation, or (2) a sufficient causal connection exists 'between

20  the supervisor's wrongful conduct and the constitutional violation.'" *Felarca v. Birgeneau*, No.

21  16-15293, slip op. at 18 (9th Cir. May 31, 2018) (quoting *Starr v. Baca*, 652 F.3d 1202, 1207

22  (9th Cir. 2011)). The "requisite causal connection" can be established by the official either by

23  "setting in motion a series of acts by others, or by knowingly refusing to terminate a series of

24

25

1  acts by others, which the supervisor knew or reasonably should have known would cause others
2  to inflict a constitutional injury." *Felarca*, No. 16-15293, slip op. at 18.

3  In other words, "[t]here is no respondeat superior theory of liability under section 1983,"
4  and a state supervisory official may not be held liable under section 1983, "merely for being
5  present at the scene of a constitutional violation or for being a member of the same operational
6  unit as a wrongdoer. *Id.* at 18-19. Here, though, plaintiff does not even allege defendant Roberts
7  was present at the time the alleged harm occurred, but rather at most appears to have named him
8  because he was a part of or lead the Olympia Police Department. Such an allegation, without
9  more, is wholly insufficient to establish section 1983 liability.[1]

10  III.  Statute of Limitations

11  Because Section 1983 does not have its own statute of limitations period, "the appropriate
12  period is that of the forum state's statute of limitations for personal injury torts." *Elliott v. City of*
13  *Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *see also Felder v. Casey*, 487 U.S. 131, 140 (1988)
14  ("[W]e have directed the lower federal courts in § 1983 cases to borrow the state-law limitations
15  period for personal injury claims."). In Washington, the limitations period for personal injury
16  torts is three years. *See Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989); *Robinson v. City of*
17  *Seattle*, 119 Wash.2d 34, 86 (1992); RCW 4.16.080(2).

18  While state law "determines the *length* of the limitations period, federal law determines
19  when a civil rights claim *accrues*." *Lukovsky v. City and Cnty. of San Francisco*, 535 F.3d 1044,
20  1048 (9th Cir. 2008) (emphasis in the original). Under federal law, the date of accrual "is the
21  date on which the statute of limitations begins to run," which is the date "when the plaintiff

---

[1] Plaintiff has attempted to file an amended complaint, in which he sets forth additional allegations concerning the involvement of defendant Roberts in the alleged constitutional violations. *See* Dkts. 22 and 29. However, as discussed separately in an order dated the same date herewith declining to accept the proposed amended complaint, those allegations fall equally short of establishing section 1983 liability.

REPORT AND RECOMMENDATION - 6

1  knows or has reason to know of the injury which is the basis of the action." *Lukovsky*, 535 F.3d
2  at 1048 (citations omitted). In other words, accrual occurs when there is "a complete and present
3  cause of action," that is, when the plaintiff "can file suit and obtain relief." *Wallace v. Kato*, 549
4  U.S. 384, 388 (2007) (quoting *Bay Area Luandry and Dry Cleaning Pension Trust Fund v.*
5  *Ferber Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

In terms of plaintiff's excessive use of force claim, that claim began to run on May 18, 2014, the day the allegedly excessive use of force occurred. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 381 (9th Cir. 1998) (excessive use of force claim accrued on the date of the arrest, which was when the plaintiff knew or had reason to know of the injury). Plaintiff, however, did not file his civil rights complaint until November 16, 2017, nearly six months after the three year statute of limitations had already run on that claim.

As for plaintiff's false arrest and unlawful imprisonment claims, the Olympia defendants argue the relevant accrual date is also May 18, 2014. Dkt. 12, p. 3 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would *normally* commence to run from that date.") (emphasis added). The Supreme Court in *Wallace* went on to note, though, that the kind of unlawful detention that is remediable by both the tort of false arrest and that of false imprisonment is "detention *without legal process*." 549 U.S. at 388-89 (emphasis in the original).

By asserting he was arrested and detained in jail based on false accusations of criminal wrongdoing, plaintiff essentially is alleging the tort of false imprisonment, that is, detention without legal process. *Hawkins v. Douglas Cnty.*, 2016 WL 347684, at *4 (E.D. Wash. Jan. 28, 2016) ("[T]he tort of false imprisonment provides the closest analogy to [plaintiff's] asserted

REPORT AND RECOMMENDATION - 7

claim, like the petitioner in *Wallace*, that he was arrested without legal process, *i.e.*, without probable cause."). For false imprisonment,[2] the statute of limitations period begins to run when the false imprisonment ends. *Wallace*, 549 U.S. at 389. This is "[r]eflective of the fact that false imprisonment consists of detention without legal process," and thus "a false imprisonment ends once the victim becomes held *pursuant to such process* – when, for example, he is bound over by a magistrate or arraigned on charges." *Id.* (citations omitted) (emphasis in the original).

Here, it is not clear exactly when plaintiff became held pursuant to legal process. In his complaint, however, plaintiff states his brother "bailed [him] out of jail" three days after his arrest on or about May 21, 2014.[3] Dkt. 4, p. 20. Plaintiff also states that "[a]fter four months of struggling with the false arrest incident," he was evicted from his home on September 13, 2014. *Id.* at p. 22. Plaintiff further states he became homeless, "living on the streets" of downtown Olympia for nine months, including over the winter of 2014-2015, going back and forth for court hearings until he went to trial on June 2, 2015. *Id.*

Again, although it is not exactly clear how plaintiff's bail and subsequent release from jail was determined – e.g., through presentation before a magistrate or via other legal process – the reasonable inference is that plaintiff was free, and continued to be free, from the allegedly unlawful detention as early as May 21, 2014. The statute of limitations on plaintiff's false arrest and unlawful imprisonment claims thus began to run as of that date. *Hawkins*, 2016 WL 347684, at *4 (finding that "the statute of limitations began to run on each false arrest count when [plaintiff] was bound over by a magistrate and presumably released on bail; that is, when he was

---

[2] In *Wallace*, the Supreme Court characterized the torts of false arrest and false imprisonment as overlapping, with the former being "a species of the latter," noting that "[e]very confinement of the person is an imprisonment," and therefore referring to the two torts together as false imprisonment. 549 U.S. at 388-89 (citation omitted).

[3] Plaintiff states in his complaint that on May 21, 2014, at around 4:30 p.m., he was given access to a telephone. Dkt. 4, p. 20. He further states he then "immediately was able to connect with [his] brother . . . who quickly bailed [him] out of jail." *Id.*

REPORT AND RECOMMENDATION - 8

held pursuant to legal process," and that "[a]lthough the precise dates this occurred after each arrest is unclear on the face of the Complaint, [plaintiff's] release dates presumably occurred . . . shortly after [each of his arrests]."). Given that plaintiff did not file his civil rights complaint until November 16, 2017, nearly six months after the statute of limitations on those claims had run, like his excessive use of force claim those claims are now barred as well.[4]

That leaves plaintiff's claim of malicious prosecution. Because "[a]n element of that tort is the 'termination of the . . . proceeding in favor of the accused" in such a manner that it "cannot be revived," the statute of limitations does not begin to run "until that termination takes place." *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 921 (2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484, 489 (1994)); *Bradford v. Scherschligt*, 803 F.2d 382, 388 (9th Cir. 2015) (quoting *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 390 (4th Cir. 2014)). Plaintiff states he was acquitted via jury trial of all criminal charges on June 2, 2015 (Dkt. 4, p. 22), a fact the Olympia defendants do not dispute. Taking that date as the date of accrual, the statute of limitations had not fully run when plaintiff filed his complaint with this Court, and therefore the malicious prosecution claim is not barred.

The Olympia defendants recognize the holdings in both *Manual* and *Bradford*, but argue the Supreme Court specifically declined to determine the accrual date of the petitioner's claim. Dkt. 21, p. 5. But that is because the Supreme Court expressly left it to the Seventh Circuit to

---

[4] Plaintiff asserts in his response to the motion to dismiss that the accrual date for his excessive use of force, false arrest, and unlawful imprisonment claims is actually January 18, 2015, which is when he became "'deathly ill' by contracting influenza and pneumonia simultaneously as a direct result of the illegal and unconstitutional actions by the defendants against plaintiff." Dkt. 20, p. 6. Even if a causal link between plaintiff's contraction of these diseases and the alleged actions of the Olympia defendants can be made – a finding the undersigned does not make here – as discussed above, the date of accrual is the date of alleged excessive use of force for the excessive use of force claim, and the date the alleged unlawful detention ended for the false arrest and unlawful imprisonment claims, and this is regardless of any injury that may occur subsequently that in some way could be related to the initial injury. *Wallace*, 549 U.S. at 390 ("If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment.") (citations omitted).

REPORT AND RECOMMENDATION - 9

decide whether the claim was, as the petitioner contended, one for malicious prosecution, or as the City of Joliet argued, one more akin to false arrest. *Manual*, 137 S.Ct. at 921-22. Here, there is no such dispute over the nature of this particular claim. Indeed, plaintiff clearly distinguishes it from his other claims for false arrest and unlawful imprisonment, which as discussed above are barred by the statute of limitations. Accordingly, plaintiff's malicious prosecution claim is timely and thus can proceed against the Olympia defendants other than defendants Roberts and Barney, for whom plaintiff has failed to establish personal participation.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court DENY the Olympia defendants motion to dismiss plaintiff's malicious prosecution claim, but GRANT their motion to dismiss defendants Roberts and Barney and plaintiff's claims for use of excessive force, false arrest, and unlawful imprisonment.

The parties have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 72(b); *see also* FRCP 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the above time limit, the Clerk shall set this matter for consideration on **June 29, 2018**, as noted in the caption.

Dated this 8th day of June, 2018.

Theresa L. Fricke
United States Magistrate Judge